**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **PUSSER'S (2001) LTD,** | ) | |
| | ) | |
| **Appellant,** | ) | |
| | ) | |
| **v.** | ) | **No. 11 C 4659** |
| | ) | |
| **HMX, LLC and HMX POLAND SP.Z.O.O.,** | ) | **Judge Rebecca R. Pallmeyer** |
| **Luxembourg Branch,** | ) | |
| | ) | |
| **Appellees.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Appellees HMX, LLC and HMX Poland SP.Z.O.O (collectively, "Appellees" or "HMX"),

acquired the "Pusser's of the West Indies" trademark for use in connection with t-shirts and

sweaters, registry number 1,449,837 (the "'837 Trademark"), from the estate of XMH Corp. 1 (f/k/a

Hartmarx Corp.) pursuant to a sale ordered by Judge Bruce W. Black of the Bankruptcy Court for

the Northern District of Illinois. Following this sale, Pusser's (2001) Ltd. ("Appellant" or "Pusser's"),

which had sold the '837 Trademark to Hartmarx Corp. in 1998, filed a cancellation petition (the

"Cancellation Petition") with the Trademark Trial and Appeal Board ("TTAB"). The Petitioner sought

to remove the '837 Trademark from the U.S. Patent and Trademark Office ("USPTO") Registry on

the basis of abandonment, fraudulent renewal, and transfer in gross on the part of the debtors prior

to the sale. In response, HMX returned to the bankruptcy court, where it filed a Motion to Compel

Compliance with Sale Order, arguing that the Cancellation Petition was in violation of the court's

§ 363 sale order (the "Sale Order"). The bankruptcy court granted HMX's motions and entered an

order (the "Compliance Order"), requiring Pusser's to dismiss the Cancellation Petition. HMX also

has a motion for summary judgment pending with the TTAB, which that board has stayed pending

the outcome of this appeal.

Pusser's appeals the bankruptcy court's decision. Pusser's asserts that the bankruptcy

court erred in concluding that the Cancellation Petition was barred by the Sale Order because the

petition only affected HMX's "use" of the '837 Trademark; that the court erred in concluding that the doctrine of *res judicata* barred the Cancellation Petition and consequently violated Pusser's' due process rights; and that the court exceeded its jurisdiction by reviving a dead trademark in violation of federal trademark law and public policy. In response, HMX argues that the bankruptcy court correctly directed Pusser's to dismiss its Cancellation Petition before the TTAB because the petition violates a final order enjoining pre-sale claims, which Pusser's cannot now challenge on either substantive or jurisdictional grounds.

The court reads the parties' briefs to present these questions on appeal: (1) whether the bankruptcy court had subject matter jurisdiction to enter the Compliance Order and the Sale Order, and whether the court would have had jurisdiction to entertain a trademark cancellation petition prior to entry of the Sale Order; and (2) whether a party may petition for cancellation of a trademark sold in bankruptcy when all of the bases for cancellation existed prior to the entry of a bankruptcy sale order, which terminated all pre-sale encumbrances. For the reasons more fully explained below, the court concludes that the bankruptcy court had the authority to rule as it did on HMX's motion and that Pusser's trademark cancellation petition is barred by the Sale Order.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

Appellant Pusser's is a proprietor of rum and rum products founded in 1979 and based in the British Virgin Islands.[2] The '837 Trademark originated on November 18, 1986, when Pusser's

---

[1]     The Record on Appeal includes page numbers that, for the majority of the Record, are illegible because the printing of those numbers overlaps with the numbering from the Bankruptcy Court's docket. Therefore, unless otherwise noted, the court cites to the docket numbers and corresponding exhibits as listed in the Bankruptcy Court's docket, *In re XMH Corp. 1*, No. 09-2046. The docket entries are cited as "Dkt. No. [ ]" or "Ex. [ ] to Dkt. No. [ ]." All page numbers refer to the docket filing system's pagination at the top of each page.

[2]     The term "pusser" is British nautical slang for a purser, a ship's paymaster and supplies officer, who was responsible for issuing the daily rum ration, or "tot," until the British Navy abolished the practice on July 31, 1970, known as "Black Tot Day." *See* Rick Jolly, *Jackspeak: A Guide to British Naval Slang and Usage* 42, 369 (3d ed. 2011).

Inc., Appellant's predecessor in interest, filed the trademark application for use in connection with t-shirts and sweaters, in international class 25. ('837 Trademark, Ex. A to Dkt. 1756.) Twelve years later, on November 3, 1998, Pusser's Inc. sold the '837 Trademark, along with other clothing related trademarks, to Hartmarx Corp. and its affiliate Tag Apparel, Inc. (along with other affiliates, the "Debtors") pursuant to a trademark purchase agreement. (Trademark Purchase Agreement, Ex. D to Dkt. 1756.) Later, on July 16, 2007, HMX Sportwear, Inc. (one of the Debtors, not to be confused with HMX, the Appellees) filed a renewal application with the U.S. Patent and Trademark Office ("USPTO") for the '837 Trademark. (Ex. 1, Part 2 to Dkt. 1849, at 13-15.) The Debtors filed for Chapter 11 bankruptcy protection on January 23, 2009. (Voluntary Pet., Dkt. 1.)

As part of the bankruptcy proceedings, the Debtors filed a Sale Motion with the court in order to begin an auction sale of assets to various purchasers under an asset purchase agreement ("APA"). (Sale Motion, Dkt. 463.) The Sale Motion had two phases. (Brief of Appellees HMX, LLC and HMX Poland SP.Z.O.O., Luxembourg Branch (hereinafter "Appellees' Brief"), at 6.) In the first phase, after notice and hearing, the court approved the bidding procedures, bid protections, and the form and manner of notice of the sales. (*Id.*) The second phase, following the actual bidding and auction process, was a hearing at which the Bankruptcy Court reviewed and approved the sales. (*Id.*) The '837 Trademark was among the assets sold in the auction.

On June 2, 2009, the Debtors served Pusser's with notice of the sale, along with copies of the Sale Motion, the approved bidding process, the APA, and the proposed form of order approving the Sale. (Aff. of Service, Dkt. 503, at 1-3, 284.)[3] It is not clear from the record why Pusser's received notice, but in addition to creditors, Debtors' Sale Motion proposed to give notice to, among others, "all entities known to have expressed an interest in a transaction with respect to any of the

_____

[3]    In addition, the Debtors published notice of the sale in the *Wall Street Journal* (U.S. and International Editions) and the *Chicago Tribune* on June 5, June 7, and June 8, 2009. (Dkt. 636; Dkt. 637.)

3

Acquired Assets during the past year." (Sale Motion ¶ 27.) Among other things, the notice of sale explained that objections to the sale were due on June 19, 2009. (Notice of Sale of Certain Assets at Auction, Ex. F to Dkt. 1756.) Despite this notice, Pusser's did not appear before the bankruptcy court, nor did it respond to the Sale Motion. On June 25, 2009, the bankruptcy court entered a Sale Order authorizing the Debtors to sell their assets to the purchasers who won at auction. (Sale Order, Dkt. 646.)

Substantially all of the Debtors' assets, including the '837 Trademark, transferred to the purchasers through the Sale Order and APA. (*Id.* at 2.) The Sale Order conveyed the Debtors' assets "free and clear of all liens, claims, encumbrances and interests" (*id.* ¶ N, at 8), and provided that upon the closing date, "all Encumbrances of any kind or nature whatsoever existing as to the Debtors or the Acquired Assets prior to the Closing Date have been unconditionally released, discharged and terminated." (*Id.* ¶ 28, at 19.) The Sale Order further provided for injunctive relief against actions to enforce such encumbrances:

> [A]ll persons holding Encumbrances against or in the Debtors or the Acquired Assets of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Encumbrances . . . against the Purchasers, their property, their successors and assigns, or the Acquired Assets . . . . Following the Closing Date, no holder of an Encumbrance in or against the Debtors shall interfere with Purchasers' title to or use and enjoyment of the Acquired Assets based on or related to such Encumbrances, or any actions that the Debtors may take in their Chapter 11 Cases.

(*Id.* ¶ 33, at 21-22.) Finally, the Sale Order provided for the bankruptcy court's ongoing jurisdiction

> to enforce and implement the terms and provisions of the [APA] . . . including, but not limited to, retaining jurisdiction to . . . (d) interpret, implement, and enforce the provisions of this Order, and (e) protect the Purchasers against . . . (ii) any Encumbrances against or in the Debtors or the Acquired Assets, of any kind or nature whatsoever, whether attaching to the proceeds of the Sale subject to the terms of this Order or otherwise.

(*Id.* ¶ 35, at 22.)

Nevertheless, one day after the bankruptcy court entered the Sale Order, Pusser's filed a trademark application for the mark "Pusser's" (the "'095 Trademark") to be used in the same international class as the '837 Trademark. (Pusser's' Trademark Application, Ex. J to Dkt. 1756.) In addition to t-shirts and sweatshirts, the Pusser's Trademark identifies use on shirts, sweatpants, shorts, trousers, jackets, windbreakers, hats, caps, shoes, and sandals. (*Id.*) The USPTO issued the registration on March 9, 2010. ('095 Trademark, Ex. 1, Part 1 to Dkt. 1849, at 19.)

Next, on November 22, 2010, Pusser's filed a petition with the TTAB seeking to cancel the '837 Trademark's registration. (Pet. for Cancellation, Ex. 1, Part 1 to Dkt. 1849, at 1-14.) The petition asserted five grounds for cancellation: (1) "on information and belief," Debtors abandoned the trademark for a period of at least three years prior to renewing the registration in 2007;[4] (2) Debtors fraudulently renewed the trademark by filing a specimen showing use of the trademark on a silk shirt, not a t-shirt or sweater as specified by the '837 Trademark; (3) the renewal application listed the incorrect owner of the trademark (HMX Sportswear, Inc. rather than Tag Apparel, Inc.) and contained false information concerning Debtors' use of the trademark; (4) the trademark was abandoned for a period of at least three years after the renewal application in 2007;[5] and (5) Debtors Tag Apparel, Inc. transferred the '837 Trademark in gross, without goodwill, to HMX Sportswear, Inc. (again, one of the Debtors, to be distinguished from HMX, the Appellees) prior to entry of the Sale Order and, consequently, the transfer between HMX Sportswear, Inc. and the Appellees was also in gross. (*Id.* at 8-12.) Appellees moved for summary judgment in their favor, arguing that the Sale Order bars the Cancellation Petition. That motion is suspended pending the outcome of this appeal. (TTAB Order, Ex. 1 to Brief of Appellant Pusser's (2001) Ltd. (hereinafter

---

[4]     The Lanham Act deems abandonment of a trademark for a period of three consecutive years to be prima facie evidence of abandonment with intent not to resume. 15 U.S.C. § 1127.

[5]     Presumably, this three-year period includes abandonment by Debtors prior to and by HMX after the entry of the Sale Order on June 25, 2009.

"Appellant's Brief").)  Also, in response to the '095 Trademark registration, HMX filed a cancellation petition with the TTAB on December 1, 2010, claiming that the existence of the Pusser's Trademark harms HMX's use of the '837 Trademark.  (Ex. 7 to Dkt. 1849.)

Finally, on March 15, 2011, HMX filed a motion with the bankruptcy court seeking an order directing the TTAB to dismiss the Cancellation Petition and to revoke the '095 Trademark registration as barred by the court's Sales Order.  (Motion to Compel Compliance with Sale Order, Dkt. 1756, at 22.)  Following a schedule of briefing and oral argument, the bankruptcy court granted that motion in part.  The court's Compliance Order required Pusser's to dismiss its Cancellation Petition before the TTAB.  (Order Partially Granting HMX's Motion to Compel, Dkt. 1890.)  In so ruling, the Bankruptcy Court rejected Pusser's' arguments that the court lacked jurisdiction over the matter and held that the doctrine of *res judicata* barred Pusser's—which received notice and an opportunity to be heard prior to the entry of the Sales Order—from challenging the Sale Order. (May 25, 2011 Hr'g Tr., Ex. 3 to Appellees' Brief, at 5.)  The court determined that Pusser's Cancellation Petition violated the Sale Order, which "conclusively found that the trademark was debtor's to transfer and stripped off any and all impediments to the purchaser's use of the trademark that existed prior to the sale."  (*Id.* at 3-4.)

The bankruptcy court concluded that an order directing the TTAB to dismiss the Cancellation Petition would be improper, and instead ordered Pusser's to cause the petition to be dismissed.  (*Id.* at 3, 6.)  This appeal arises from that order.  The bankruptcy court declined to order the TTAB to revoke the registration of the '095 Trademark, concluding that the issue was one of trademark infringement, and therefore beyond the court's jurisdiction (*id.* at 5-6)—a decision that HMX does not challenge.

## DISCUSSION

Pusser's contends that the bankruptcy court committed a series of errors that warrant a reversal of the Compliance Order. First, Pusser's argues that the bankruptcy court erred in concluding that the Cancellation Petition would jeopardize HMX's use of the '837 Trademark. Pusser's asserts that it does not challenge HMX's right to use the trademark, but rather HMX's right to maintain the '837 Trademark on the USPTO's registry. Concerning registration, Pusser's contends that because the '837 Trademark was sold "as is," HMX purchased a defective trademark that can be challenged in the TTAB. Pusser's further asserts that determining whether the trademark was abandoned is a noncore proceeding outside the bankruptcy court's jurisdiction. Second, Pusser's argues that the bankruptcy court improperly applied the doctrine of *res judicata* and that the court violated Pusser's' due process rights by ordering it to withdraw its Cancellation Petition. Third, and finally, Pusser's argues that allowing the Sale Order to bar future challenges to the '837 Trademark's validity effectively revives an abandoned trademark and that such an action is outside the bankruptcy court's jurisdiction.

In response, HMX contends that the Cancellation Petition was an encumbrance appropriately barred by the Sale Order and there was no denial of due process because Pusser's was given notice of the bankruptcy proceedings. The Sale Order does not revive a dead trademark, HMX urges, but rather cuts off any claim that Pusser's could have asserted before the bankruptcy court entered the Sale Order. HMX further contends that the bankruptcy court had subject matter jurisdiction to enter the Compliance Order and that Pusser's is precluded from challenging the court's subject matter jurisdiction to enter the Sale Order.

Consistent with the bankruptcy court's assessment of Pusser's assertions (May 25, 2011 Hr'g Tr., at 4), this court reads the parties' briefs to raise two issues on appeal. First, the court must address whether the bankruptcy court had subject matter jurisdiction to enter the Sale and

Compliance Orders, or to entertain a trademark cancellation claim prior to entry of the Sale Order. The second issue is whether Pusser's could bring a petition to cancel the '837 Trademark's registration—which alleged Debtors' abandonment, fraud, and transfer in gross—when the Sale Order transferring the '837 Trademark permanently enjoined all actions against the purchasers or the '837 Trademark for pre-sale encumbrances. After addressing the appropriate standards of review, the court addresses these issues in turn.

## I.     Standard of Review

Generally, bankruptcy court conclusions of law are reviewed *de novo* and their factual findings for clear error. *Stamat v. Neary*, 635 F.3d 974, 979 (7th Cir. 2011). Further, "[m]ixed questions of law and fact are subject to de novo review." *Id.* (citing *Mungo v. Taylor*, 355 F.3d 969, 974 (7th Cir. 2004)). Where a bankruptcy court interprets its own order, however, such interpretation is entitled to more deference and is reviewed for an abuse of discretion. *See In re UAL Corp*, 635 F.3d 312, 319 (7th Cir. 2011) (explaining that when a bankruptcy court later interprets a Chapter 11 reorganization plan that the court approved, its interpretation is afforded full deference and is reviewed for an abuse of discretion); *In re Airadigm Commc'ns, Inc.*, 547 F.3d 763, 770 (7th Cir. 2008) ("'[W]hen a reorganization court interprets a confirmed plan of reorganization, it interprets words on which it has already passed judgment. Under these circumstances, we believe that full deference to the court's decision is in order.'" (quoting *In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 961 F.2d 1260, 1264 (7th Cir. 1992))). "A bankruptcy court abuses its discretion when its decision is 'premised on an incorrect legal principle or a clearly erroneous factual finding, or when the record contains no evidence on which the court rationally could have relied.'" *In re UAL Corp*, 635 F.3d at 319 (quoting *In re Wiese*, 552 F.3d 584, 588 (7th Cir. 2009)).

## II.     Subject Matter Jurisdiction

It is unclear whether Pusser's contends that the bankruptcy court lacked subject matter jurisdiction to enter the Compliance Order, to enter the Sale Order, or to entertain a claim for trademark cancellation, had Appellant raised such a claim prior to entry of the Sale Order. Ultimately, it appears that Pusser's' position has less to do with subject matter jurisdiction and more to do with whether a bankruptcy court has the power to issue an injunction that bars a trademark cancellation petition.  The court addresses each issue in turn.

### A.     Jurisdiction to Enter the Compliance Order

Pusser's focuses on whether the bankruptcy court had jurisdiction to hear a trademark cancellation claim.  This question may be a difficult one, but the court concludes it is largely irrelevant; the bankruptcy court did not adjudicate the merits of a trademark cancellation claim,[6] but rather addressed a motion to enjoin such a claim as a violation of the permanent injunction in its Sale Order.  It is well settled that a bankruptcy court "ha[s] jurisdiction to interpret and enforce its own prior orders."  *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 129 S. Ct. 2195, 2205 (2009) (citing *Local Loan Co. v. Hunt*, 292 U.S. 234, 239 (1934)); *see also* 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."); *cf.* 28 U.S.C. § 1651 ("All Writs Act").  Jurisdiction in such cases is especially appropriate when a bankruptcy court "explicitly retained jurisdiction to enforce its injunctions."  *Travelers*, 129 S. Ct. at 2205.  Here, the bankruptcy court's Sale Order did so

---

[6]     Notably, the bankruptcy court would not have subject matter jurisdiction to adjudicate such a claim after entry of the Sale Order.  As the Seventh Circuit "has observed on more than one occasion, '[bankruptcy court] jurisdiction does not follow . . . property [that is sold]'; rather, that jurisdiction 'lapses when property leaves the estate.'"  *In re FedPak Sys., Inc.*, 80 F.3d 207, 214 (7th Cir. 1996) (alterations in original) (quoting *In re Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir. 1987)) (citing *In re Edwards*, 962 F.2d 641, 643 (7th Cir. 1992); *In re Chicago, Rock Island & Pac. R.R. Co.*, 764 F.2d 1182, 1186 (7th Cir. 1986))).

retain jurisdiction.  Consequently, the bankruptcy court had subject matter jurisdiction to hear a motion alleging that the Cancellation Petition violated the court's Sale Order.

### B.      Jurisdiction to Enter the Sale Order

To the extent that Pusser's wishes to challenge the bankruptcy court's subject matter jurisdiction at the time it entered the Sale Order, Pusser's' argument fails for two reasons.  First, and foremost, the finality accorded bankruptcy court sale orders precludes subsequent challenges to the bankruptcy court's subject matter jurisdiction after entry of the order in all but the most exceptional cases.  Pursuant to 11 U.S.C. § 363(b), debtors must obtain approval from the bankruptcy court for the sale of property of the estate outside the normal course of business.  Under certain circumstances, the court can approve the sale of the property "free and clear of any interest in such property of any entity other than the estate."  11 U.S.C. § 363(f).  The Seventh Circuit has read 11 U.S.C. § 363(m) to accord finality to a bankruptcy court's order approving a sale, subject to appeal only if a challenger obtains a stay pending appeal or if a collateral attack of the order meets the requirements of Federal Rule of Civil Procedure 60(b).  *See FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 286 (7th Cir. 2002) ("[T]he order approving a bankruptcy sale is a judicial order and can be attacked collaterally only within the tight limits that FED. R. CIV. P. 60(b) imposes on collateral attacks on civil judgments."); *La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.*, 914 F.2d 900, 908 (7th Cir. 1990) ("[E]xcept for the narrow exceptions set forth in Rule 60(b), bankruptcy sales, if they are to fulfill their role, must be final when made."); *In re Met-L-Wood Corp.*, 861 F.2d 1012, 1018 (7th Cir. 1988) (noting that § 363(m) "expresses a highly relevant concern with the importance of finality in judicial sales in bankruptcy"); *In re Sax*, 796 F.2d 994, 998 (7th Cir. 1986) ("[Section] 363(m) and the cases interpreting it have clearly held that a stay is necessary to challenge a bankruptcy sale authorized under § 363(b).").

Where absence of subject matter jurisdiction is not so egregious as to render a sales order void under Rule 60(b)(4), "the courts say that the court that issued the judgment in excess of its jurisdiction had jurisdiction to determine jurisdiction, and its jurisdictional finding, even if erroneous, is therefore good against collateral attack, like any other erroneous but final judgment." *In re Edwards*, 962 F.2d at 644. Appellant neither obtained a stay of the sale order nor attempts to fit its objections to the bankruptcy court's jurisdiction within the framework of Rule 60(b).

Furthermore, although Pusser's characterizes it as egregious, the bankruptcy court was correct that it possessed subject matter jurisdiction to enter the Sale Order. The entry of orders approving the sale of the property of a debtor's estate outside the usual course of business is a "core proceeding" within a bankruptcy court's subject matter jurisdiction, *see* 28 U.S.C. § 157(b)(2)(N); *see also In re Motors Liquidation Co.*, 428 B.R. 43, 56-57 (S.D.N.Y. 2010) ("It is well-settled that bankruptcy courts have core jurisdiction to approve section 363 sales . . . ."). Bankruptcy courts have the ability to enter final determinations on §363 sales because such sales are a product of the Bankruptcy Code, and therefore are adjudications of "public rights" that Congress can delegate to an Article I court without violating Article III. *See Stern v. Marshall*, 131 S. Ct. 2594, 2613 (2011) (describing cases that fit within the "public rights exception" as those "in which the claim at issue derives from a federal regulatory scheme"). A number of courts have likewise concluded that a bankruptcy court's issuance of injunctions to achieve the purposes of 11 U.S.C. § 363(f) are also "core" proceedings within the subject matter jurisdiction of the bankruptcy court. *See In re Wolverine Radio Co.*, 930 F.2d 1132, 1144-45 (6th Cir. 1991); *In re Motors Liquidation Co.*, 428 B.R. at 57**;** *In re Camp Arrowhead, Ltd.*, 451 B.R. 678, 695-96 (Bankr. W.D. Tex. 2011). Consequently, the bankruptcy court had jurisdiction to enter the Sale Order.

### C. Jurisdiction to Entertain a Trademark Cancellation Petition

The question of whether the bankruptcy court has jurisdiction to hear a trademark cancellation claim has some relevance here. Pusser's has argued that the bankruptcy court could not have heard the trademark cancellation claim prior to entry of the Sale Order; consequently, according to Pusser's, its filing a motion for cancellation prior to the Sale Order "would have been a futile exercise." (Appellant's Brief at 23.) In Pusser's view, only the TTAB, *see* 15 U.S.C. § 1067(a), or a federal district court, *see* 28 U.S.C. § 1338(a), have jurisdiction to hear cases raising trademark registration issues.

At a minimum, however, the bankruptcy court would have had "related to" jurisdiction over the trademark cancellation claim. *See* 28 U.S.C. § 157(c)(1) ("A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11.") A dispute is "related to" a bankruptcy proceeding when "it affects the amount of property available for distribution or the allocation of property among creditors." *In re Xonics*, 813 F.2d at 131. The '837 Trademark constituted property of the Debtors' estate. *See U.S. Ozone Co. v. U.S. Ozone Co. of Am.*, 62 F.2d 881, 886 (7th Cir. 1932) ("When owned by a bankrupt, except when strictly personal in nature, trade-marks and trade-names pass with the good will of the bankrupt's business to the trustee for the benefit of creditors . . . ."). Consequently, a cancellation petition, if brought before the entry of the Sale Order, would be within the court's "related to" jurisdiction because the petition, if successful, would extinguish the economic value of the registered trademark.

Pusser's is correct that the bankruptcy court might have been unable to render a final judgment on the claim if a trademark cancellation petition is a noncore proceeding, as Pusser's contends. *See* 28 U.S.C. § 157(c)(1) ("In [a noncore] proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed

findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected."). Withdrawal to the district court might even have been mandatory, as a trademark cancellation petition appears to call for substantial application of nonbankruptcy federal law. *See id.* § 157(d) ("The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."); *In re McCrory Corp.*, 160 B.R. 502, 506 (S.D.N.Y. 1993) (granting a motion to withdraw the reference and to transfer proceedings to the district court where a debtor sought cancellation of a competitor's trademark). But neither of these provisions call into question the bankruptcy court's subject matter jurisdiction. *See Stern*, 131 S. Ct. at 2607 (noting that § 157's allocation of "authority to enter final judgments between the bankruptcy court and the district court . . . does not implicate questions of subject matter jurisdiction"). In any event, Pusser's has failed to show that bringing a trademark cancellation claim as part of the bankruptcy proceedings would have been futile. At the very least, the district court could have heard the issue if withdrawal of the reference were required, and Pusser's does not contest that the district court has subject matter jurisdiction over such claims.

### D. Bankruptcy Courts' Power to Enter Injunctions

Although this court concludes that bankruptcy court's subject matter jurisdiction to hear the above claims, Pusser's contends that the bankruptcy court "exceed[ed] its jurisdiction" by entering orders that prevent Pusser's from challenging the '837 Trademark's registration. The jurisdictional argument is an awkward one because whether a court has subject matter jurisdiction is a threshold issue concerning a court's ability to hear and decide a motion or claim; but here, Pusser's is arguing that the *relief* granted by the court exceeded its jurisdiction. Injunctive relief may be proper or improper, but granting improper relief does not divest a court of subject matter jurisdiction. As

such, Pusser's' jurisdictional argument is not so much a challenge to the bankruptcy court's subject matter jurisdiction as it is a challenge to the court's power, as part of its § 363 sale order, to permanently enjoin pre-sale claims against the debtors, their assets, or the purchasers of those assets.

But for the same reasons that Pusser's cannot challenge the subject matter jurisdiction of the bankruptcy court to enter the Sales Order, Pusser's cannot now challenge the power of that court to strip a trademark cancellation claim pursuant to 11 U.S.C. § 363(f).[7]  Respectfully, it matters not whether the bankruptcy court's order allowing for transfer of the trademark free and clear of all "encumbrances" was a correct application of § 363(f).  *See FutureSource*, 312 F.3d at 285-86 (concluding that a sales order transferring intellectual property free and clear of all "interests" extinguished a party's intellectual-property license with the debtor where that party did not object to the sale); *cf. ITOFCA, Inc. v. MegaTrans Logistics, Inc.*, 322 F.3d 928, 930 (7th Cir.

---

[7]    That section of the Bankruptcy Code provides:

The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
(2) such entity consents;
(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
(4) such interest is in bona fide dispute; or
(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).  In granting the Sale Order, the bankruptcy court observed that sale of the assets "free and clear of all Encumbrances of any kind or nature whatsoever" was necessary to the consummation of the sale because the purchasers would not have agreed to buy the assets otherwise.  (Sale Order ¶ N, at 8.)  The court concluded that "holders of liens, claims or encumbrances who did not object or withdrew objections to the Sale are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code."  (*Id.*)  The court's application of § 363(f)(2) appears consistent with Seventh Circuit precedent, according to which "lack of objection (provided of course there is notice) counts as consent."  *FutureSource*, 312 F.3d at 285.

2003) (barring a subsequent copyright infringement claim because "[w]hen a bankruptcy court approves the sale of an asset of the debtor, a person who has notice of the sale cannot later void it on the ground that he is the asset's real owner"); *La Preferidade*, 914 F.2d at 908 (finding tort and contract claims barred by a prior bankruptcy judgment whether or not the bankruptcy court was correct in selling the debtor's trademarks "free and clear of all liens, claims and encumbrances"); *In re Sax*, 796 F.2d at 997-98 (concluding that where a court authorized a sale under § 363(b), "it matters not whether the authorization was correct or incorrect" where the sale order was final and the creditor did not obtain a stay pending appeal). As discussed above, that order is final and reviewable only under Federal Rule 60(b), which Pusser's has not raised.

In summary, the court concludes (a) that the bankruptcy court had subject matter jurisdiction to enter the Compliance Order; (b) that Appellant cannot now challenge that court's jurisdiction to enter the Sale Order or the court's power to authorize the sale of the '837 Trademark free of "encumbrances"; and (c) that Pusser's has not established that the bankruptcy court would have been powerless to address a trademark cancellation claim, had Pusser's brought such a claim in a timely fashion. Consequently, the only remaining issue is whether the bankruptcy court correctly concluded that the Cancellation Petition was an "encumbrance" subject to the permanent injunction the court issued in its Sale Order.

### III. Trademark Cancellation Petition as an Encumbrance Barred by the Sale Order

Pusser's urges that the bankruptcy court erred in concluding that the Cancellation Petition is an encumbrance prohibited by the Sale Order. Pusser's contends that a trademark cancellation claim is not an "encumbrance" because Pusser's is not challenging HMX's right to use the trademark. Other language in the Sale Order and APA precludes an expansive interpretation the term "encumbrances," Pusser's insists. Finally, Pusser's asserts that its petition is not barred by *res judicata*. The court discusses each of these contentions in turn.

## A. Interpreting "Encumbrance"

Whether or not the Cancellation Petition is an encumbrance that should have been brought before the Sale Order was entered is at the heart of this dispute. The APA defines "encumbrance" as

> any charge, lien, claim, mortgage, lease, hypothecation, deed of trust, pledge, security interest, option, rights of setoff, right of use, first offer or first refusal, easement, servitude, restrictive covenant, encroachment, encumbrance, liability, commitment, or other similar restriction of any kind, other than Permitted Encumbrances.

(APA, Ex. A, Part 1 to Dkt. 485, at 66.) The bankruptcy court focused on the "right of use" language ¶ N—also found in the Sale Order's permanent injunction preventing a pre-sale encumbrance holder from interfering with a purchaser's "title to or use and enjoyment of the Acquired Assets" (Sale Order ¶ 33, at 22)—and concluded that the Sale order stripped the '837 Trademark of any unasserted limitations on a purchaser's use of the trademark that may have existed prior to the sale. (May 25, 2011 Hr'g Tr. at 3-4.) As explained previously, where a bankruptcy court is interpreting its own order, its interpretation is afforded a high level of deference. Absent a showing of abuse of discretion, this court is inclined to adopt the bankruptcy court's interpretation.

Even without such deferential review, the result is the same. As an alternative construction for the term "encumbrance," Pusser's suggests that the term is limited to financial restrictions on a piece of sale property, and accordingly concludes that because the '837 Trademark's registration is not financial, it is not an encumbrance. (Appellant's Brief at 18.) But such a narrow construction appears inconsistent with the broad language of the statute. In interpreting the power of bankruptcy courts to approve a sale of assets free and clear of "any interest" under § 363(f), the Seventh Circuit has observed that "the Code itself does not suggest that 'interest' should be understood in a special or narrow sense; on the contrary, the use of the term 'any' counsels in favor

of a broad interpretation." *Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 545 (7th Cir. 2003). For example, in a case where claimants charged parties to a § 363 sale with fraud, the Seventh Circuit agreed with the bankruptcy court that the allegation was an improper collateral attack on the final order authorizing the sale. *See In re Met-L-Wood Corp.*, 861 F.2d at 1018; *cf. Regions Bank v. J.R. Oil Co., LLC*, 387 F.3d 721, 731-32 (8th Cir. 2004) (RICO claim against parties to a § 363 sale barred as an improper collateral attack). A petition to cancel the registration of a trademark fits comfortably within an expansive definition of "all liens, claims, encumbrances and interests" where the petition alleges that the debtors, prior to entry of a § 363 sale order, committed acts that are grounds for cancellation.

Whatever the Code may authorize, Pusser's contends that language in the APA at issue in this case precludes such an expansive interpretation, however. Pusser's points first to a provision of the APA providing that the Debtors

> make no representation or warranty . . . relating to the acquired assets . . . including, without limitation, any representation or warranty as to value, merchantability, fitness for a particular purpose or for ordinary purposes, or any other matter . . . [and] the acquired assets . . . being transferred to the purchaser are conveyed on an "as is, where is" basis as of the closing . . . .

(APA § 3.27, at 24-25.) As Pusser's asserts, that provision means that the Debtors transferred the '837 Trademark with all liens, claims, encumbrances, and interests still attached. As the court reads the language, however, Debtors merely represented that they were not warranting the transferred assets. The representation relates to the Debtors' potential liability to Appellees, not claims against Appellees by third parties.

Pusser's also contends that language in the bankruptcy court's Sale Order permits it to challenge the mark. Specifically, the Order provides for transfer of the Acquired Assets

> free and clear of all Encumbrances of any kind or nature whatsoever with all Encumbrances . . . to attach to the net proceeds of the Sale in the order of their priority, *with the same validity, force and effect which they now have as against the Acquired Assets.*

(Sale Order ¶ 8, at 13 (emphasis added).) According to Pusser's, this language means that the '837 Trademark was sold subject to all existing claims against it, including Pusser's' pre-sale claims of abandonment, fraudulent renewal, and transfer in gross. In fact, the quoted language simply provides that preexisting encumbrances, stripped from the assets themselves, will "attach to the *net proceeds*." Pusser's' reading of the provision, which provides for transfer free and clear of such encumbrances, turns the provision on its head.

Moreover, the contention that Pusser's is not attacking HMX's use of the trademark is disingenuous. Pusser's argues that it is not challenging HMX's use of the trademark, which, according to Pusser's, not even the TTAB would be authorized to decide. *See Wallpaper Mfrs., Ltd. v. Crown Wallcovering Corp.*, 680 F.2d 755, 766-67 (C.C.P.A. 1982) ("Nothing the [TTAB] does can prevent parties from using a mark. The board's function is to determine whether there is a right to secure or to maintain a registration."). Rather, Pusser's contends that it challenges only HMX's right to maintain the trademark on the registry. But Pusser's concurrently filed its own application for the '095 Trademark application, subsequently granted by the USPTO, which would give Pusser's the right to exclude HMX's use if Pusser's is also successful at removing the '837 Trademark from the registry.[8]

Furthermore, the Code provides a holder with many protections when the trademark is listed on the USPTO registry—protections that HMX will be unable to enjoy if the registration is cancelled. Registration is "prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the

---

[8]    Pusser's' argument that it is not challenging the validity of the sale from Debtors to Appellees is likewise disingenuous. As the court reads the trademark Cancellation Petition, Pusser's argues there that the '837 Trademark was transferred in gross not only when transferred from Tag Apparel, Inc. to HMX Sportswear, Inc. but also when transferred from HMX Sportswear Inc. to Appellees. (Cancellation Pet. ¶¶ 18-19.) Pusser's asks the TTAB to find both transfers invalid. (*Id.*)

registration." 15 U.S.C. § 1115(a). Registration holders can obtain injunctive relief against counterfeiters. *Id.* §§ 1114(1), 1116. Also, if a registered trademark is violated, the registration holder can recover the infringer's profits, damages, treble damages, and the costs associated with bringing the civil suit. *Id.* § 1117(a)-(b). A cancellation petition to strip HMX of these benefits would undoubtedly interfere with HMX's title to, or use and enjoyment of, the trademark.

In conclusion, this court agrees with the bankruptcy court that the Cancellation Petition is an encumbrance within the meaning of the APA and Sale Order.

## B.    Finality of *In Rem* § 363 Sale, Not *Res judicata*, Bars the Cancellation Petition

Pusser's also contends that the bankruptcy court erred in ruling that *res judicata* barred the Cancellation Petition. Pusser's is correct that the entry of the Sale Order and the petition before the TTAB lack the concurrence in identity required of the common law doctrine of *res judicata*. *See Matrix IV, Inc. v. Am. Nat'l Bank & Trust Co. of Chicago*, 649 F.3d 539, 547 (7th Cir. 2011) ("Res judicata has three elements: '(1) an identity of the parties or their privies; (2) [an] identity of the cause of action; and (3) a final judgment on the merits.'" (alteration in original) (quoting *Alvear-Velez v. Mukasey*, 540 F.3d 672, 677 (7th Cir. 2008))). But the bankruptcy court correctly noted that the common law doctrine of *res judicata* is not the controlling standard in this case. (May 25, 2011 Hr'g Tr. at 5.) Rather, as the Seventh Circuit noted in *In re Met-L-Wood Corp.*, to the extent that a claim is brought later by "nonparties to the sale proceeding . . . it is not barred by res judicata. But it is barred. A proceeding under section 363 is an *in rem* proceeding. It transfers property rights, and property rights are rights good against the world, not just against parties to a judgment or persons with notice of the proceeding." 861 F.2d at 1017; *accord Regions Bank*, 387 F.3d at 732. Consequently, the *Met-L-Wood* court held that the *in rem* nature of the sale proceeding precluded the bankruptcy trustee from later bringing a fraud claim against the debtor

and others in connection with a § 363 sale, which the court considered a "thinly disguised collateral attack on the judgment confirming the sale." *Id.* at 1018.[9]

In this case, the Cancellation Petition violates the bankruptcy court's Sale Order because it raises Debtors' pre-sale abandonment, fraudulent renewal, and transfer in gross as grounds for cancellation; each of these are arguments that Pusser's could have brought prior to, but were extinguished by, the Sale Order's permanent injunction. Pusser's' petition, coupled with the '095

---

[9]     Neither Pusser's nor HMX mention the Seventh Circuit's decision in *Barnett v. Stern*, 909 F.2d 973 (7th Cir. 1990). In *Barnett*, the court addressed a RICO claim brought by a bankruptcy trustee against the debtor's son for his part in a fraudulent scheme that led the bankruptcy court to order the trustee to take control of assets in a sham third-party trust formed by the debtor. *Id.* at 974-75. The district court concluded that because the trustee did not bring the RICO claim prior to entry of that bankruptcy court order, the suit was barred by *res judiciata*. *Id.* at 975-76. The Seventh Circuit reversed, holding that a bankruptcy court's resolution of a core claim has no preclusive effect on a noncore claim that could have been brought, but was not, under the court's "related to" jurisdiction. *Id.* at 981-82. The Fifth Circuit's reasoning in *Howell Hydrocarbons, Inc. v. Adams*, 897 F.2d 183 (5th Cir. 1990), that res judiciata should apply only to unasserted core claims because only those claims could have been adjudicated fully by the bankruptcy court. *Id.* at 978-79. Despite postdating *Met-L-Woods*, the *Barnett* Court did not discuss that decision.

As the Seventh Circuit recently recognized, however, the holding in *Barnett* has been called into question. *See Matrix IV*, 649 F.3d at 550-52. The court noted that every circuit court since *Barnett* has rejected the core/noncore distinction for the purposes of the claim-preclusive effect of bankruptcy judgments; and the Fifth Circuit itself has questioned in dictum its holding in *Howell*. *See id.* at 551 (collecting cases). Furthermore, the court observed that several post-*Barnett* Seventh Circuit cases have held prior bankruptcy judgments to be claim preclusive without mentioning *Barnett*. *Id.* at 450-51 (citing *ITOFCA*, 322 F.3d at 930-31; *Adair v. Sherman*, 230 F.3d 890, 894 (7th Cir. 2000); *La Preferida*, 914 F.2d at 908-09). The court noted that *Barnett*'s core/noncore distinction is especially ripe for reconsideration given the Supreme Court's holding in *Stern v. Marshall* that despite being a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(C), "Article III did not permit the bankruptcy court to hear and finally decide" a state-law counterclaim. *Id.* at 551 (citing *Stern*, 131 S. Ct. at 2608). Because the parties had not briefed the issue and the case could be decided on collateral estoppel grounds, the Seventh Circuit declined to resolve the tension in the case law. *Id.* at 551-52.

The parties in this case have likewise failed to brief this issue. This court need not attempt to reconcile this conflict because this case can also be decided on a narrower ground: the distinction the *Met-L-Wood* court made between claim preclusion under the doctrine of *res judicata*, which that court applied to parties that had participated in the sales process, and the *in rem* nature of § 363 sale orders, which the court applied to nonparties to the sale proceeding. *See Met-L-Wood*, 861 F.2d at 1017 (concluding that although a fraud claim brought by nonparties to a sale proceeding was not barred by *res judicata*, it was barred because an *in rem* § 363 sale "transfers property rights, and property rights are rights good against the world"). Moreover, suits to enforce pre-sale encumbrances are also barred here by the Sale Order's permanent injunction.

Trademark application, is a thinly veiled collateral attack on the order approving the § 363 sale of the '837 Trademark to Appellees. The court expresses no opinion here on any registration cancellation claims that might be brought by Pusser's or others based on grounds not related to Debtors' pre-sale conduct—a trademark's descriptiveness, genericness, or deceptiveness, for example. Likewise, Pusser's is free to pursue claims based on HMX's post-sale conduct.[10] Further, the court need not decide whether a party who received no notice or defective notice of the sale would be precluded from bringing a trademark cancellation claim. But the bankruptcy court correctly concluded that Pusser's, which did have notice of the sale, cannot maintain a petition before the TTAB that is based on claims foreclosed by the court's Sale Order. To hold otherwise would frustrate the finality accorded court orders approving § 363 sales.

### C.    Appellant's Other Arguments

Pusser's raises several additional arguments that the court need not discuss at length. Pusser's contends that the Compliance Order violates the Lanham Act by reviving an abandoned trademark and enlarging the rights of trademark's purchaser. The court agrees with HMX, however, that this result does not revive a dead trademark; instead, it merely precludes an untimely trademark cancellation claim. Pusser's also contends that the Compliance Order violates public policy by "effectively shield[ing] all future challenges regarding trademark rights." (Appellant's Brief at 24.) But the Compliance Order does not shield *all* future challenges—only improper collateral attacks based on pre-sale conduct. Pusser's was free to participate in the sale process, preserve its cancellation petition, and seek adjudication of the parties' respective rights in the proper forum, but chose not to do so. Finally, Pusser's invokes due process, but does not develop this argument

---

[10]    Pusser's contends that one of its grounds for cancellation—abandonment from 2007 onward—involves post-sale conduct on the part of HMX. The court concludes that the bankruptcy court did not abuse its discretion in ordering Pusser's to cause the Cancellation Petition to be dismissed in its entirety because that ground for cancellation attempts to combine pre-sale and post-sale abandonment into a single period of abandonment.

in either of its briefs.  In any event, the court notes that Debtors served Pusser's with notice of the sale prior to the action, notice that included the APA and the proposed form of order approving the sale.

### CONCLUSION

For the reasons stated above, the bankruptcy court's order is AFFIRMED.

ENTER:

Dated: March 28, 2012

_____
REBECCA R. PALLMEYER
United States District Judge